CTJ

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FLEXIBLE INNOVATIONS, LTD., §
 §
      Plaintiff, §
 §
v. §  CIVIL ACTION NO.
 §  4-05-CV-021-A
AMERICAN COVERS, INC. d/b/a §  A JURY IS DEMANDED
HANDSTANDS, §
 §
      Defendant. §

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Flexible Innovations, Ltd., by and through its attorneys, alleges that:

### I. PARTIES

1.      Plaintiff Flexible Innovations, Ltd. is a limited partnership organized under the

laws of the State of Texas, having its principal place of business at 1120 South Freeway,

Suite 204, Fort Worth, Texas 76104, and is sometimes hereinafter referred to as "FI."

2.      Upon information and belief, Defendant American Covers, Inc. d/b/a

HandStands is a corporation organized under the laws of the State of Utah, having offices

at 102 W. 12200 S, Draper, Utah 84020. Summons may be delivered to Defendant by and

through its President and Registered Agent, Gary Deaton at 102 W. 12200 S, Draper,

Utah 84020. Defendant American Covers, Inc. d/b/a HandStands is sometimes hereinafter

referred to as "ACI."

3.      Upon information and belief, Defendant ACI is a foreign corporation, which has in the past and continues to date, to engage in business in the State of Texas, but has not designated nor maintained agents for service of process in the State of Texas.  Upon information and belief, Defendant ACI has sold a wide variety of goods in and through the State of Texas, including but not limited to those Texas sales generated as a result of its (i) sales representatives and/or employees that make sales and sales calls in Texas; and (ii) its internet websites at <u>www.handstands.com</u>, <u>www.americancovers.com</u>, and **<u>www.mousemat.com</u>**.  Upon information and belief, Defendant ACI has solicited business and made sales in Tarrant County and elsewhere in the State of Texas as a result of its marketing efforts, all purposeful acts occurring in the State of Texas for Defendant ACI to avail itself of the protections and privileges of the State of Texas; that these causes of action arise from such business activities within the State of Texas; and that the conferring of jurisdiction over Defendant ACI in this court is not offensive to traditional notions of fair play and substantial justice.

## II.  JURISDICTION AND VENUE

4.      This action is for acts of infringement of federal trademark rights and federal unfair competition, all arising under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1051 et seq.  This court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a).  This court has jurisdiction over the related common law and state claims pursuant to the court's pendent jurisdiction under 28 U.S.C. § 1338(b). Venue is proper in this district pursuant to 28 U.S.C. § 1391.  Furthermore, there is full diversity

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                                                          Page 2
F \STOR\RLS\FLEXI\ACI\COMPLNT.1AA

between Plaintiff FI and Defendant ACI, and the amount in controversy substantially exceeds $100,000, exclusive of interests and costs.

### III. PLAINTIFF FI'S RIGHTS

5.      Since at least as early as the summer of 2003, Plaintiff FI has nationally marketed and sold its line of anti-slip, shock absorption applique products (hereafter "Products") known by its "EGRIPS" trademark.  Plaintiff FI has had widespread sale of its "EGRIPS" Products, which have been distributed nationally and sold through well known retail outlets such as Radio Shack, Comp USA, and Office Depot.

6.      Plaintiff FI is the owner of all right, title, and interest in and to U.S. Trademark Registration No. 2,899,410, as issued on November 2, 2004, for "EGRIPS," a true and accurate copy of which is attached hereto as Pleading Exhibit A.

7.      Plaintiff FI has become known and recognized in the industry as providing its high quality Products to the consuming public that are identified by its "EGRIPS" mark. Further, Plaintiff FI's "EGRIPS" mark has acquired secondary meaning in the marketplace as indicating Plaintiff FI as the source or origin of its Products.

8.      Plaintiff FI has promoted its "EGRIPS" Products in a variety of media, including print media, attendance at national trade shows, and participation at industry meetings.

### IV. DEFENDANT ACI'S ACTIVITIES

9.      Upon information and belief, Defendant ACI is currently marketing and selling a product known as its "IGRIP" sticky pad.  Upon information and belief, Defendant ACI

offers for sale and sells its "IGRIP" product as a result of its multiple internet websites, a copy of a screen shot of which is attached as Pleading Exhibit B.

10.     Upon information and belief, Defendant ACI has actively promoted its "IGRIP" product in the same general lines of commerce that Plaintiff FI has promoted its "EGRIPS" Products.  Indeed, both Plaintiff FI and Defendant ACI displayed and marketed their respective "EGRIPS" and "IGRIP" products at the recent Consumer Electronics Show in Las Vegas, Nevada during January 6-9, 2005.

11.     Upon information and belief, the principals of Defendant ACI have long been aware of Plaintiff FI's "EGRIPS" Products.

12.     Upon information and belief, as a result of sales of its "IGRIP" products generated by virtue of marketing efforts in Tarrant County, in the Northern District of Texas, and elsewhere, Defendant ACI has misappropriated Plaintiff FI's inherently distinctive "EGRIPS" trademark by adopting the confusingly similar mark "IGRIP" for its similar products.

13.     Upon information and belief, Defendant ACI's products are of the same general type as those marketed and sold by Plaintiff FI.  Defendant ACI's use of the "IGRIP" mark is likely to cause confusion, mistake, and to deceive the public in that Defendant ACI's products are likely to be mistaken for and confused with Plaintiff FI's "EGRIPS" Products.

14.     Furthermore, Defendant ACI's use of the "IGRIP" trademark is likely to create the mistaken impression in the public that Defendant ACI's products are endorsed by

Plaintiff FI, or that Defendant ACI is sponsored by or affiliated with, or in some manner associated with Plaintiff FI.

15. The acts of Defendant ACI, as alleged herein, are without the license, permission, or consent of Plaintiff FI.

16. The acts of Defendant ACI, as alleged herein, have caused, and unless restrained by the Court, will continue to cause serious and irreparable harm to Plaintiff FI and to the goodwill associated with Plaintiff FI's distinctive "EGRIPS" trademark.

17. Defendant ACI's utilization of a mark that so closely resembles and mimics Plaintiff FI's "EGRIPS" trademark, while Plaintiff FI continues to currently and actively expand the sales of its Products, if allowed to continue, may destroy or irreparably injure Plaintiff FI's market for its "EGRIPS" Products in this District, in Texas, and elsewhere.

18. Plaintiff FI's remedy at law is not adequate to compensate it for the injury threatened, since it is entitled to be in control of the use of its "EGRIPS" mark to advertise, market, promote, and sell its Products, and to identify Plaintiff FI as the source and origin of its well known, high quality Products, and all good will appertaining thereto.

## V. COUNT ONE
## INFRINGEMENT UNDER THE LANHAM ACT

19. Plaintiff FI repeats and realleges paragraphs 1 through 18 of this Complaint and the acts of Defendant ACI as set forth therein or incorporated herein as a pleading to this Count.

20. The unauthorized use by Defendant ACI of the "IGRIP" trademark in association with Defendant ACI's offering for sale and selling of its products in commerce

constitutes an infringement of Plaintiff FI's U.S. Trademark Registration No. 2,899,410 and related trademark rights, which is likely the cause of Plaintiff FI's injuries and damages in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

21.    The unauthorized use by Defendant ACI of the "IGRIP" mark in association with Defendant ACI's offering for sale and selling of its products in commerce constitutes an adoption of a mark, which constitutes a false designation of origin – a knowingly false description or representation – regarding the goods offered or sold by Defendant ACI in commerce and an infringement that is likely to cause Plaintiff FI injury and damage in violation of § 43(a) of the Lanham Act, 15 U.S.C.§ 1125(a).

## VI. COUNT TWO
## COMMON LAW VIOLATIONS AND UNFAIR COMPETITION

22.    Plaintiff FI repeats and realleges paragraphs 1 through 21 of this Complaint and the acts of Defendant ACI as set forth therein or incorporated herein as a pleading to this Count.

23.    On information and belief, Defendant ACI has infringed and continues to infringe upon Plaintiff FI's common law rights by adopting and using a colorable imitation of Plaintiff's distinctive "EGRIPS" mark, namely, "IGRIP," as used in association with its marketing, offering for sale, and sale of Defendant ACI's products, knowing full well of Plaintiff FI's prior rights in and to its "EGRIPS" mark, as used on Plaintiff FI's Products.

24.    Upon information and belief, Defendant ACI intentionally selected the "IGRIP" mark for use with its products so as to trade upon the well developed goodwill and reputation of Plaintiff FI as a result of the widespread advertising, marketing, and sale of

Plaintiff FI's "EGRIPS" Products. The use of FI's mark by Defendant ACI, when used in connection with its goods offered to others, is confusingly similar with Plaintiff FI's "EGRIPS" mark as used with its Products.

25. Upon information and belief, Defendant ACI's adoption and use of the "IGRIP" mark has enabled it to deliberately pass-off and palm-off its goods as those of Plaintiff FI with the intention to deceive and defraud the public.

26. Upon information and belief, such actions of Defendant ACI not only deceive the purchasing public, but cause irreparable injury to Plaintiff FI's business and good will and further damage Plaintiff FI's ability to expand its operations. Defendant ACI's usage of "IGRIP" mark misleads and deceives the public by causing the public to believe erroneously that Defendant ACI's products have the sponsorship or approval of Plaintiff FI.

27. Upon information and belief, Defendant ACI has engaged in unfair competition and continues to engage in unfair competition with Plaintiff FI in that Defendant ACI has knowingly, willfully, and fraudulently appropriated Plaintiff FI's mark by adopting a mark for its products that is confusingly similar to that of Plaintiff FI's mark, and not only is there a likelihood of confusion, but upon information and belief, actual confusion has resulted in the marketplace. This attempt by Defendant ACI to trade upon Plaintiff FI's good will and reputation, and to unlawfully appropriate the benefit of Plaintiff FI's years of marketing exposure, constitutes unfair competition by Defendant ACI.

28. The purposely deceptive use of the "IGRIP" mark by Defendant ACI has caused irreparable injury to Plaintiff FI's reputation and good will as symbolized by its

"EGRIPS" mark and will continue to cause damage unless Defendant ACI is enjoined from such actions.

## VII. COUNT THREE
## DECLARATORY JUDGMENT

29.    Plaintiff FI brings this Count pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.  This Count arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

30.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

31.    This Court has personal jurisdiction over Defendant ACI and venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391, as set forth hereinabove in this Plaintiff's First Amended Complaint.

32.    On January 14, 2005, Plaintiff FI filed the "Plaintiff's Original Complaint" against Defendant ACI alleging infringement under the Lanham Act and common law violations and unfair competition, as set forth hereinabove in paragraphs 19 through 28. At the time of filing, Summons was issued.

33.    On January 14, 2005, Plaintiff FI provided notice to Defendant ACI that "Plaintiff's Original Complaint" had been filed by providing a courtesy copy (not a service copy) along with a letter directed to the President of ACI.  This letter, while setting out in summary fashion the matters pled in more detail in "Plaintiff's Original Complaint," also presented a manner in which this dispute might be negotiated so as to be quickly resolved, setting a deadline of February 1, 2005, for a response.  A true and accurate copy of this

letter (without the attached "Plaintiff's Original Complaint") is attached hereto as Pleading Exhibit C.

34.    By facsimile dated February 1, 2005, sent on or about 5:17 p.m., Mountain Standard Time, Defendant ACI responded by a letter from its attorneys dated February 1, 2005, with an attached Complaint filed on February 1, 2005, and date stamped 16:39:13 on the same date.  A true and accurate copy of Defendant ACI's letter and Complaint as subsequently mailed is attached hereto as Pleading Exhibit D.

35.    Upon information and belief, Defendant ACI in its February 1, 2005, letter disingenuously argues that Defendant ACI's usage of "IGRIP" does not infringe Plaintiff's "EGRIPS" mark.

36.    In its letter of February 1, 2005, Defendant ACI claims to be the owner of United States Patent No. 6,673,409 ("the '409 Patent"), entitled "Frictional Holding Pad" issued January 6, 2004.

37.    Upon information and belief, Defendant ACI's claims of patent infringement are frivolous and are simply an obvious attempt to deflect attention from the issue of Defendant ACI's willful infringement of Plaintiff FI's "EGRIPS" mark and further reflects Defendant ACI's attempts to unreasonably and vexatiously multiply these proceedings.

38.    There is an actual controversy between Plaintiff FI and Defendant ACI with respect to the validity of Defendant ACI's '409 Patent, and with respect to the alleged infringement of Defendant ACI's Patent '409 by Plaintiff FI.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                                    Page 9
F \STOR\RLS\FLEXI\ACI\COMPLNT 1AA

39.    Upon information and belief, ACI's Patent '409 is invalid for failing to comply with the Patent Laws of the United States, specifically 35 U.S.C. §§ 102, 103, 112, and 132.

40.    Plaintiff FI denies that it has committed any acts of alleged infringement in any manner of any valid claim of Defendant ACI's Patent '409.

## VIII. DAMAGES

41.    The amount of actual damages and lost sales sustained by Plaintiff FI and/or profits of Defendant ACI as a direct and proximate result of Defendant ACI's misconduct and violations set forth under Counts One and Two, hereinabove, was not ascertainable at the time of filing this Complaint, but will be ascertained more clearly during pre-trial discovery, and will be pled with more specificity at the conclusion of discovery; however, upon information and belief, such damages are well in excess of $100,000, exclusive of interest and costs.

42.    In view of the frivolous nature of Defendant ACI's claim for patent infringement as set out in Count Three and Defendant ACI's attempts to unreasonably and vexatiously multiply these proceedings, Plaintiff FI further seeks an award under 28 U.S.C. § 1927.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff FI prays for the following relief:

(a)    That Defendant ACI, its officers, agents, servants, affiliates, employees, attorneys, and representatives and all those in privity or acting in

concert with Defendant ACI and each and all of them be preliminarily, and after trial on the merits, permanently enjoined from directly or indirectly:

    (i)    using the mark "IGRIP" or any other confusingly similar mark in association with Defendant ACI's products, all of which is confusingly similar to the "EGRIPS" mark of Plaintiff FI, as used in association with its Products;

    (ii)    performing any act or using any word, name, style, title, or other mark that is likely to cause confusion, to cause mistake, to deceive, or otherwise mislead the trade or public into believing that Plaintiff FI and Defendant ACI are one in the same or in some way connected; or that Plaintiff FI is a sponsor of Defendant ACI, or its products; or that Defendant ACI is in some manner affiliated, associated with, or under the supervision or control of Plaintiff FI; or that the products of Defendant ACI originated or are approved by Plaintiff FI; or is likely in any way to lead to the trade or to the public to associate Defendant ACI with Plaintiff FI; and,

    (iii)    using any trade practice whatsoever, including those complained of herein, which tend to unfairly compete with or injure Plaintiff FI's business or goodwill;

(b)     That Defendant ACI be required to account for and pay over to Plaintiff FI all gains, profits, and advantages derived by it from the activities herein complained of;

(c)     That all products of Defendant ACI utilizing the "IGRIP" mark, along with all plates, molds, matrices, and other means of making same, shall be delivered up for destruction pursuant to 15 U.S.C. § 1118;

(d)     That Plaintiff FI recover from Defendant ACI treble the amount of damages suffered by Plaintiff FI pursuant to 15 U.S.C. § 1117;

(e)     That the Court award punitive and exemplary damages against Defendant ACI in favor of Plaintiff FI in the sum of no less than $100,000 by reason of Defendant ACI's fraud and palming-off;

(f)     That this case be deemed exceptional and that Plaintiff FI be awarded its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and other applicable laws;

(g)     That the Court declares that Defendant ACI's '409 Patent and each claim thereof is invalid;

(h)     That the Court declare that Plaintiff FI has not infringed any claim of Defendant ACI's '409 Patent and declare that Plaintiff FI is not liable for any acts of infringement of Defendant ACI's '409 Patent;

(i)     That the Court find this case to be exceptional and award Plaintiff FI its costs, expenses, and attorney's fees in accordance with 35 U.S.C. § 285; and

(j)     That Plaintiff FI be awarded relief pursuant to 28 U.S.C. § 1927; and

(k)     That Plaintiff FI be awarded its costs of this litigation; and,

(l)     That Plaintiff FI receive all other, further, or different relief as the Court may deem just and proper.

## X.  JURY DEMAND

Pursuant to Federal Rules of Civil Procedure, Rule 38(b), Plaintiff FI hereby demands a trial by jury in the above-identified action.

Respectfully submitted,

By: _____
        RICHARD L. SCHWARTZ
        SBN 17869500

WHITAKER CHALK SWINDLE & SAWYER L.L.P.
301 Commerce Street, Suite 3500
Fort Worth, TX 76102-4186
(817)878-0500
Fax: (817)878-0501

ATTORNEYS FOR PLAINTIFF
FLEXIBLE INNOVATIONS, LTD.





# The United States of America

## CERTIFICATE OF REGISTRATION
### PRINCIPAL REGISTER

*The Mark shown in this certificate has been registered in the United States Patent and Trademark Office to the named registrant.*

*The records of the United States Patent and Trademark Office show that an application for registration of the Mark shown in this Certificate was filed in the Office; that the application was examined and determined to be in compliance with the requirements of the law and with the regulations prescribed by the Director of the United States Patent and Trademark Office; and that the Applicant is entitled to registration of the Mark under the Trademark Act of 1946, as Amended.*

*A copy of the Mark and pertinent data from the application are part of this certificate.*

***To avoid CANCELLATION of the registration, the owner of the registration must submit a declaration of continued use or excusable non-use between the fifth and sixth years after the registration date.*** *(See next page for more information.) Assuming such a declaration is properly filed, the registration will remain in force for ten (10) years, unless terminated by an order of the Commissioner for Trademarks or a federal court. (See next page for information on maintenance requirements for successive ten-year periods.)*



*Director of the United States Patent and Trademark Office*

Int. Cl.: 17

Prior U.S. Cls.: 1, 5, 12, 13, 35 and 50

Reg. No. 2,899,410

## United States Patent and Trademark Office

Registered Nov. 2, 2004

## TRADEMARK
### PRINCIPAL REGISTER

## EGRIPS

FLEXIBLE INNOVATION, LTD (PARTNERSHIP)
3816 CANDLELITE COURT
FORT WORTH, TX 761093424

FOR: ELASTOMERIC APPLIQUE FOR PLACE-MENT ONTO HANDHELD ELECTRONIC DEVICES TO PROVIDE ANTI-SLIP AND SHOCK ABSORP-TION, IN CLASS 17 (U.S. CLS. 1, 5, 12, 13, 35 AND 50).

FIRST USE 6-5-2003; IN COMMERCE 6-5-2003.

SER. NO. 78-200,215, FILED 1-6-2003.

KATHERINE STOIDES, EXAMINING ATTORNEY



 **& CHECK OUT**



**HOME** | **ABOUT US** | **CONTACT US** | **SEARCH** | **ORDER INFO**

 **Hot NEW Product** ▶  **iPak** The Ultimate in iPod™ Protection

Search By Product ▼

- WHAT'S HOT

- Air Fresheners

- Computer Accessories

- Automotive Accessories

- CD/DVD Media Storage

- Fitness & Fun

VIEW LARGER IMAGE



**iGrip™ Sticky Pad®**

MSRP $8 99

Features.
• Holds iPod™ on Dash
• Clings to Any Dash
• Washable, Removable, Reusable
• Temperature Resistant
• Non-Magnetic
• No Adhesives

TESTIMONIALS

Size: 5 3/4" x 3 3/4" x 1/8"
Color: White
iGrip™ FAQ

**ADD TO CART** ▶

**Related Products:**


iPak™
Color: Black
MSRP $39.99
VIEW PRODUCT


Sticky Pad®
Color: Black
MSRP $6 99
VIEW PRODUCT


Jelly Sticky Pad®
Colors: Black, Blue, Red
MSRP $8 99
VIEW PRODUCT

• DOWNLOAD IMAGES    • PRODUCT SAFETY    • SALES SHEETS    • RETAIL LOCATOR    • PROMOTIONAL PRODUCTS

Copyright © 2005 American Covers, Inc. dba HandStands®· All Rights Reserved



# WHITAKER, CHALK, SWINDLE & SAWYER, L.L.P.

## ATTORNEYS AT LAW

### 301 COMMERCE STREET, SUITE 3500
### FORT WORTH, TEXAS 76102-4186

**(817) 878-0500**
METRO (817) 429-6268
WWW.WHITAKERCHALK.COM

RICHARD L. SCHWARTZ
DIRECT DIAL (817) 878-0524

FAX (817) 878-0501
RSCHWARTZ@WHITAKERCHALK.COM
21601.001

January 14, 2005

**FEDERAL EXPRESS**

Mr. Gary Deaton                                          ***Settlement Offer***
American Covers, Inc.                              ***Pursuant to Rule 408, F.R.E.***
102 W. 12200 S
Draper, Utah 84020

Re:   *Flexible Innovations, Ltd. v. American Covers, Inc. d/b/a HandStands*
        Civil Action No. 4-05-CV-021-A; pending in the United States District
        Court, Northern District, Fort Worth Division

Dear Mr. Deaton:

        We represent Flexible Innovations, Ltd. ("FI") in matters relating to its intellectual property rights, including trademarks and unfair competition.

        As you are no doubt well aware, FI markets and sells nationally an extensive line of "EGRIPS" products, including its line of anti-slip applique products known by its "EGRIPS" trade mark.  FI has had widespread sale of its "EGRIPS" products, which have been distributed nationally and sold through well known retail outlets, such as Radio Shack, Comp USA, and Office Depot. FI has become known and recognized in the industry as providing its high quality products to the consuming public that are identified by its "EGRIPS" mark.

        In addition, FI is the owner of all right, title, and interest in and to United States Trademark Registration 2,899,410 as issued on November 2, 2004, for its "EGRIPS" mark.

        FI has recently become aware of the "IGRIP" Sticky Pad Product of American Covers, Inc. ("ACI").  The adoption and use of "IGRIP" by ACI is a blatant attempt by ACI to trade upon the good will that FI has developed in and to its "EGRIPS" mark.  Such action by ACI is a willful violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). ACI's actions of infringement of FI's rights may well give rise to an injunction enjoining the sale of the products of ACI, as well as the risk of multiple damages and attorneys fees being awarded to FI pursuant to 15 U.S.C. § 1117.

# WHITAKER, CHALK, SWINDLE & SAWYER, L.L.P.

Mr. Gary Deaton
January 14, 2005
Page 2

     We have taken the liberty of enclosing a copy of the "Plaintiff's Original Complaint" that has now been filed in the Northern District of Texas, Fort Worth Division. This letter does not constitute a service of the Summons with respect to such lawsuit. However, before the parties become embroiled in the expense of litigation, FI is willing to consider a one time settlement along the following cardinal points: (1) ACI cease and desist the sale of any of its "IGRIP" branded products; and (2) ACI pay to FI a settlement amount of $10,000, plus 75¢ for each and every "IGRIP" product in inventory and/or sold by ACI.

     If you are interested in trying to remedy this matter promptly, FI will forego service of summons in this matter until February 1, 2005. If we have not heard from you by that date, the above offer of settlement is withdrawn, and we will assume that you wish to have this matter resolved in the courts. The choice is yours.

     Rest assured that if we have not heard from you, you will be hearing from us.

Very truly yours,

Richard L. Schwartz

RLS\dg
F:\STOR\RLS\FLEXI\ACI\DEATON L2
Enclosure
cc:   (w/Enc.)
Flexible Innovations, Ltd.
1120 South Freeway, Suite 204
Fort Worth, TX 76104





Peter M. de Jonge
*Registered Patent Attorney*
dejonge@tnw.com

February 1, 2005

VIA FACSIMILE AND U.S. MAIL

Richard L. Schwartz
WHITAKER, CHALK, SWINDLE & SAWYER, L.L.P.
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4186
Facsimile: (817) 878-0501

Re:   Flexible Innovations, Ltd. vs. American Covers, Inc.
      Case No. 4-05-CV-021-A; U.S. District Court, Northern District of Texas
      Your Reference No. 21601.001
      TNW Docket No. 24236

Dear Mr. Schwartz:

Please be advised that the above-named firm represents American Covers, Inc. d/b/a HandStands (hereinafter "American Covers") with respect to all intellectual property matters. Accordingly, please direct all future correspondence regarding this matter to me at the address provided below.

We have received and reviewed your letter to Gary Deaton dated January 14, 2005 as well as the attached complaint you filed against American Covers. In order to address your allegations, we have also examined product samples of both our client's IGRIP holding pad and your client's EGRIPS anti-slip pads.

We disagree with your allegation that American Covers' IGRIP holding pad is a blatant attempt to trade upon the goodwill of your client. American Covers fully respects the trademarks of others and makes every effort to avoid any likelihood of confusion in the marketplace. We also disagree with your allegation that American Covers' IGRIP product constitutes trademark infringement under the Lanham Act.

In comparing the marks and the product packaging of the parties' respective products, we find that there is no likelihood of confusion due to significant differences between the marks and the product trade dress. First, we believe that the term "grip" is descriptive of a feature of both American Covers and Flexible Innovation's products. In fact, we note that you refer to the EGRIPS product on your website as having a "super-grippy material that grips virtually any surface."

**www.tnw.com**

8180 South 700 East · Suite 200 · Sandy, Utah 84070-0562 · 801.566.6633 · f. 801.566.0750 · patlaw@tnw.com │ **U.S. Mailing Address:** P.O. Box 1219 · Sandy, Utah 84091-1219

The Team Approach to Premier Performance®

Second, the stylization and the design of the marks are considerably different. IGRIP is styled in a simple print format, whereas EGRIPS incorporates a distinctive design of a hand and several tildes along with a slanted "e" and oppositely slanted "g."

Moreover, the mark IGRIP gives a completely different commercial connotation than EGRIPS, particularly when viewed in connection with the trade dress of the product packaging and the products themselves. The mark IGRIP connotes a "gripping" feature of a single pad with the personification effect of "I," and it also connotes its special purpose for "gripping" Apple's IPOD devices. This connotation is amplified by the accompanying trade dress, textual information, and other packaging on American Covers' IGRIP product. On the other hand, EGRIPS connotes multiple "gripping" devices for use on various electronic devices.

Additional factors include the fact that the trade dress of the respective products is significantly different in color and overall appearance. Also, American Covers' IGRIP product is clearly labeled as a product of HANDSTANDS further eliminating any possibility for confusion. Accordingly, we do not believe that American Covers' IGRIP holding pad constitutes trademark infringement of your client's EGRIPS products.

Finally, we believe that your EGRIPS product infringes one or more claims of U.S. Patent No. 6,673,409 for a "Frictional Holding Pad," which is owned by American Covers. As such, the making, using, selling, and offering for sale of your client's EGRIPS products may entitle our client to damages, injunctive relief, and attorneys' fees. Accordingly, American Covers has filed the attached complaint with the U.S. District Court for the District of Utah.

Additionally, American Covers has pending claims that if issued are also likely to prevent the making, using, selling, and offering for sale of the EGRIPS products. In any event, we demand that you immediately cease the making, using, selling, and offering for sale of the EGRIPS products and provide us with an accounting of all such products that have been sold so that we may access the extent of our client's damages.

Alternatively, we suggest that the parties enter into discussions for amicable resolutions to these matters, such as a possible license of the patent technology and a possible license or consent agreement regarding the trademarks. Please do not hesitate to contact me to discuss this matter further.

Very truly yours,

THORPE NORTH & WESTERN LLP

Peter M. de Jonge

PMD/NSW
Encl.
• Complaint against Flexible Innovations
cc: American Covers

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM )

FEB - 1 2005

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| AMERICAN COVERS INC., a Utah Corportation | MARKETIC L. ZHANG DEPUTY CLERK<br>FLEXIBLE INNOVATIONS, LTD., a Texas Limited Partnership |

**(b)** County of Residence of First Listed Plaintiff **Salt Lake**
(EXCEPT IN U.S PLAINTIFF CASES)

County of Residence of First Listed Defendant **Tarrant**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
See attached sheet

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| | | ☐ 640 R.R. & Truck | ☒ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☒ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | | | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 730 Labor/Mgmt.Reporting | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 900Appeal of Fee Determination Under Equal Access |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
35 USC 271; Utah Code Ann 13-5a-103 and/or 13-5-14 and Utah Common Law

Brief description of cause:
Patent Infringement, Unfair Competiton

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**
250,000.00 & injunction

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE _____   DOCKET NUMBER _____

DATE
02/01/20

SIGNATURE OF ATTORNEY OF RECORD
_(signature)_

FOR OFFICI
RECEIPT

Judge Dale A. Kimball
DECK TYPE: Civil
DATE STAMP: 02/01/2005 @ 16:39:13
CASE NUMBER: 2:05CV00083  DAK

JUDGE _____   MAG. JUDGE _____

ATTACHMENT TO CIVIL COVER SHEET

PETER M. DE JONGE #7185
NATHAN S. WINESETT #9556
THORPE NORTH & WESTERN LLP
8180 South 700 East, Suite 200
Sandy, Utah 84070
Phone (801) 566-6633
Fax (801) 566-0750

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

FEB - 1 2005

MARKUS B. ZIMMER, CLERK
BY
_____
DEPUTY CLERK

Peter M. de Jonge, Utah Bar No. 7185
Nathan S. Winesett, Utah Bar No. 9556
THORPE NORTH & WESTERN, L.L.P.
8180 South 700 East, Suite 200
Sandy, Utah 84070-0562
Telephone: (801) 566-6633
Facsimile: (801) 566-0753

Attorneys for Plaintiff, American Covers, Inc.

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| AMERICAN COVERS, INC., a Utah corporation, <br><br> Plaintiff, <br><br> vs. <br><br> FLEXIBLE INNOVATIONS, LTD., a Texas limited partnership, <br><br> Defendants. | Judge Dale A. Kimball <br> DECK TYPE: Civil <br> DATE STAMP: 02/01/2005 @ 16:39:13 <br> CASE NUMBER: 2:05CV00083 DAK <br><br> **COMPLAINT** <br><br> **WITH JURY DEMAND** <br><br> Judge _____ |

Plaintiff American Covers, Inc. (hereinafter "American Covers" or "Plaintiff") by and through its counsel hereby files this Complaint with Jury Demand against Defendant Flexible Innovations, Ltd. (hereinafter "Flexible Innovations" or "Defendant" ).

## COMPLAINT

American Covers complains and alleges as follows:

1

## PARTIES, JURISDICTION AND VENUE

1.      American Covers is a Utah corporation with a principal place of business at 102 West

12200 South Draper, Utah 84020.

2.      Upon information and belief, Flexible Innovations is a Texas limited partnership with a

principal place of business at 1120 South Freeway, Suite 204, Fort Worth, Texas 76104.

3.      American Covers brings this action under the U.S. patent laws of the United States Code

and under various other Utah state and common law provisions.

4.      This Court has diversity jurisdiction over this action under 28 U.S.C. §1332 because the

Plaintiff and the Defendants are citizens of different states and the amount in controversy

exceeds $75,000.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331,

1332, 1338, and 1367.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

7.      This Court has general personal jurisdiction over Flexible Innovations because it has

sufficient contacts with the state of Utah.  Furthermore, this Court has specific personal

jurisdiction over Flexible Innovations because the acts giving rise to this lawsuit occurred in the

state of Utah.

## GENERAL ALLEGATIONS

8.      American Covers is in the business of inventing, developing, manufacturing, distributing,

and selling various computer accessories and other products, including frictional holding pads for

removably attaching items, such as cell phones, to a surface, such as an automobile dash.

2

9.      American Covers is the owner of U.S. Patent 6,673,409 B1 entitled "Frictional Holding Pad" issued January 6, 2004 and claiming priority to July 31, 2001 (attached as Exhibit A and hereinafter referred to as the "'409 Patent" or "the Patent").

10.     In accordance with 35 U.S.C. § 287, American Covers has given notice to the public of the '409 Patent by duly and properly marking all articles covered by the Patent that have been sold, offered for sale, or imported by American Covers, including American Covers' STICKY PAD, JELLY STICKY PAD, CELL MATE, JELLY CELL MATE, and IGRIP brand holding pads.

11.     Despite notice of American Covers' Patent, Flexible Innovations has been and continues to make, use, import, offer to sell, and/or sell within the United States products which infringe one or more claims of the '409 Patent.  Specifically, on information and belief, Flexible Innovations makes, uses, imports, offers to sell, and/or sells a holding pad product under the brand EGRIPS, which infringes one or more claims of the '409 Patent (See Exhibit B).  The EGRIPS holding pad possesses the capability of performing each of the recited limitations in one or more claims of the '409 Patent.

12.     As such, American Covers is entitled to a preliminary and permanent injunction to prevent further infringement of the '409 Patent by Flexible Innovations, and American Covers is also entitled to damages, together with interest and costs.  Furthermore, American Covers believes that it should receive treble damages and attorneys' fees due to the exceptional nature of this case.

13.     By copying the patented features of American Covers' products, Flexible Innovations has and continues to unfairly compete with American Covers under Utah state law.

3

14.    American Covers has and continues to be significantly damaged by these actions.

15.    So long as Flexible Innovations continues performing the unlawful and improper actions described in this Complaint, American Covers will continue to suffer irreparable harm that will not be fully compensable by money damage.

## FIRST CAUSE OF ACTION
### (Patent Infringement, 35 U.S.C. § 271)

16.    American Covers hereby incorporates by this reference each and every allegation contained in paragraphs 1 through 15 as if set forth fully herein.

17.    As shown above, American Covers alleges that Flexible Innovation has been and continues to make, use, import, offer to sell, and/or sell within the United States products which infringe one or more claims of the '409 Patent owned by American Covers.

18.    In accordance with 35 U.S.C. § 287, American Covers has given notice to the public of the '409 Patent by duly and properly marking all articles covered by the Patent that have been sold, offered for sale, or imported by American Covers.

19.    As such, American Covers is entitled to a preliminary and permanent injunction to prevent further infringement of the '409 Patent by Flexible Innovations, and American Covers is also entitled to damages, together with interest and costs.

20.    American Covers also alleges that Flexible Innovations has intentionally copied American Covers' patented features.  As such, American Covers believes that it should receive treble damages and attorneys' fees due to the exceptional nature of this case.

## SECOND CAUSE OF ACTION
**(Unfair Competition, Utah Code Ann. §13-5a-103 and/or §13-5-14 and Utah Common Law)**

21.     American Covers hereby incorporates by this reference each and every allegation contained in paragraphs 1 through 20 as if set forth fully herein.

22.     Flexible Innovations has engaged in unfair methods of competition by intentionally infringing one or more claims of the '409 Patent.

23.     American Covers has suffered actual damages as a result of Flexible Innovations' unfair competition in an amount to be proven at trial.

24.     By engaging in the above-described activities, Flexible Innovations has engaged in unfair competition under Utah Code Ann. §13-5a-103 and/or §13-5-14 and under Utah common law. Under §13-5a-103, American Covers is entitled to its actual damages, costs and attorneys' fees, and punitive damages. Under §13-5-14, American Covers is entitled to injunctive relief and the greater of $2,000 or three times the amount of actual damages sustained plus court costs.

**WHEREFORE,** it is respectfully requested that the court enter a judgment in favor of American Covers as follows:

A.  That the Court enter judgment that Flexible Innovations has infringed U.S. Patent No. 6,673,409 B1.

B.  That the Court enter judgment that Flexible Innovations has competed unfairly pursuant to Utah Code Ann. §13-5a-103 and §13-5-14 and Utah common law.

C.  That the Court preliminarily and permanently enjoin Flexible Innovations, and its officers, agents, servants, employees, successors and assigns, from any further infringement of

U.S. Patent No. 6,673,409 B1, including the making, using, importing, offering to sell, and selling of Flexible Innovations' EGRIPS brand products.

     D. That Flexible Innovations be ordered to file with this Court and serve on American Covers within thirty (30) days after service on Flexible Innovations of the injunction granted herein, or such extended period as the Court may direct, a report in writing, under oath, setting forth in detail the manner and form in which Flexible Innovations has complied with the injunction and order of the Court.

     E. That Flexible Innovations be ordered to pay damages to American Covers, together with interest, in an amount to be determined by this Court, but not less than $250,000.

     F. That Flexible Innovations be ordered to pay treble damages.

     G. That Flexible Innovations be ordered to pay the greater of $2,000.00 or three times the amount of actual damages determined by this Court plus court costs in accordance with Utah Code Ann. §13-5-14.

     H. That Flexible Innovations be ordered to pay the costs of this action.

     I. That Flexible Innovations be ordered to pay American Covers' attorneys' fees for this action.

     J. That Flexible Innovations be ordered to pay punitive damages in an amount to be determined by this Court.

     K. That Flexible Innovations be required to pay prejudgment and post-judgment interest until such awards are paid.

     L. That American Covers has such other and further relief as shall seem just and proper to the Court.

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, American Covers hereby demands a jury trial on all claims and issues so triable.

DATED this 1st day of February, 2005.

Peter M. de Jonge
Nathan S. Winesett

THORPE NORTH & WESTERN LLP
P.O. Box 1219
Sandy, Utah 84091-1219
Telephone (801) 566-6633
Facsimile (801) 566-0750

PMD/NSW
Exhibits A and B attached

# EXHIBIT A

(12) **United States Patent**

Wheatley

(10) Patent No.: **US 6,673,409 B1**

(45) **Date of Patent:** **Jan. 6, 2004**

(54) **FRICTIONAL HOLDING PAD**

(75) Inventor: **Alan J. Wheatley**, Draper, UT (US)

(73) Assignee: **American Covers, Inc.**, Draper, UT (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/209,948**

(22) Filed: **Jul. 30, 2002**

**Related U.S. Application Data**

(60) Provisional application No. 60/344,571, filed on Dec. 28, 2001, and provisional application No. 60/308,955, filed on Jul. 31, 2001.

(51) **Int. Cl.**[7] ................................................. **B32B 3/30**

(52) **U.S. Cl.** .................... **428/40.1**; 296/97.3; 296/97.7; 296/97.9; 428/41.3; 428/41.5; 428/42.1; 428/131; 428/137; 428/147; 428/156; 428/158; 428/160; 428/192; 428/194; 428/922

(58) **Field of Search** ................................ 428/40.1, 42.1, 428/131, 192, 194, 41.3, 41.5, 156, 137, 141, 158, 160, 922; 296/97.3, 97.7, 97.9

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,128,118 A    8/1938   Burford

| | | | |
|---|---|---|---|
| 2,466,502 A | 4/1949 | Stiller | |
| 2,642,248 A | 6/1953 | Semon | |
| 3,654,047 A | 4/1972 | Berkowitz | |
| 4,749,222 A | * 6/1988 | Idland | 296/97 |
| 4,944,311 A | 7/1990 | Eldridge, Jr. et al. | |
| 5,036,866 A | 8/1991 | Eldrige, Jr. et al. | |
| 5,358,094 A | * 10/1994 | Molinaro | 40/524 |
| 5,638,249 A | * 6/1997 | Rubino | 361/225 |

* cited by examiner

*Primary Examiner*—Nasser Ahmad

(74) *Attorney, Agent, or Firm*—Thorpe North & Western, LLP

(57) **ABSTRACT**

A frictional holding pad for removably attaching items, such as a cell phone, to a surface, such as a dash, to allow storage of items on the pad to prevent the items from shifting or sliding due to the movement of the support surface. A bottom surface of the pad is tacky to cling to the surface and a top surface is tacky to cling to the item. A lowermost contact surface of the pad can have a greater surface area than an uppermost contact surface. Indicia can be formed on the pad. The pad can be translucent or transparent. The pad can include an expanded vinyl material or a polyurethane material.

**29 Claims, 3 Drawing Sheets**





FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6

US 6,673,409 B1

**1**

## FRICTIONAL HOLDING PAD

The benefit of U.S. Provisional Patent Application Nos. 60/308,955, filed Jul. 31, 2001, and Ser. No. 60/344,571, filed Dec. 28, 2001, is claimed.

### BACKGROUND OF THE INVENTION

#### 1. Field of the Invention

The present invention relates generally to a frictional holding pad or material, particularly useful to releasably secure an object from movement in a vehicle. More particularly, the present invention relates to an expanded vinyl frictional holding material configured to non-chemically adhering to a planar or contoured support surface.

#### 2. Related Art

It is often desirable to non-permanently adhere a first object to a second object, but retain the option of removing the first object without damaging either object. Conventional adhesive devices, however, often utilize a chemical bond that is permanent in nature so that removal of the adhesive device either damages the object on which it was used, or leaves a residue on the object that is difficult to remove without damaging the object. Similarly, mechanical retaining devices often are mounted to an object in such a way as to permanently alter the object. There are also magnetic devices in which two pieces are glued to the dash and phone, and then magnetically couple together.

Additionally, many items carried in day-to-day life must often be temporarily stored to free an individual's hands for other tasks. One common example of such a situation arises when an individual enters a vehicle. Items such as cell phones, personal digital assistants, writing instruments or glasses must be stored in order to free the hands of the individual so that he or she may operate the vehicle. In many cases, however, an individual may wish to have ready access to the items should the items be quickly needed, for instance if a call is received on the cell phone. Because most vehicles involve stop-and-go or side-to-side motion, placing such items on, open surfaces raises the risk that the items will slide off the open surface during operation of the vehicle. The movement of such items can cause damage to the item itself, damage to the vehicle or interior accessories, and posses a safety problem. For example, a cell phone may break if it falls to the floor, or may fall onto another object, such as a laptop computer, causing further damage. In addition, a driver may be distracted by trying to retrieve the phone from the floor. Hence, storing such items on open surfaces is generally not a viable option.

While most vehicles include storage locations for such personal items, storing the items generally requires the inconvenience of opening a compartment, such as a glove box in an automobile, and storing the items along with the other items already contained within the compartment. Once stored in such compartments, items are not visible to an individual and are not easily accessible should the individual wish to quickly access the items.

Various solutions to the problem have been proposed. Most notably, special mounting devices have been used to secure items in the car. Such mounting devices typically have a base that is secured to some object in the vehicle, and a receiving portion to receive and hold the item. For example, some devices are configured to receive and hold a cell phone. Other devices are configured to receive and hold sunglasses. One disadvantage with such mounting devices is that they are typically customized to hold a particular item,

**2**

or type of item, and are ill suited for other items. For example, a mounting device for a cell phone may not adequately hold sunglasses. Thus, it may be necessary to have several mounting devices within the vehicle, one for a cell phone, one for sunglasses, one for a GPS unit, etc. One disadvantage with having several mounting devices is that the vehicle appears cluttered. In addition, such mounting devices are typically sold as accessories, and thus add expense. Another disadvantage with such mounting devices is that they can permanently alter and devalue the vehicle.

### SUMMARY OF THE INVENTION

It has been recognized that it would be advantageous to develop a system and method to releasably secure items to a surface without permanently altering the surface. In addition, it has been recognized that it would be advantageous to develop a system and method to releasably secure items to a surface in a vehicle without permanently altering the vehicle surface, and allowing for ready retrieval of the object. In addition, it has been recognized that it would be advantageous to develop such a system and method capable of being used with various different items. In addition, it has been recognized that it would be advantageous to develop such a system and method capable of providing advertisement, and/or personalization or customization.

The invention provides a frictional holding device configured to be disposed on a vehicle or other surface and to receive and secure an item thereon. The device includes a pad with a bottom disposed on the vehicle surface, and a top to removably receive the item thereon. The top has an uppermost contact surface to contact and frictionally cling to the item. The bottom has a lowermost contact surface to contact and frictionally cling to the vehicle surface. The lowermost contact surface has a greater surface area than the uppermost contact surface. Thus, the pad can cling with greater force to the surface of the vehicle while an item is removed from the pad.

In accordance with a more detailed aspect of the present invention, the pad can be bendable and includes a flexible material to conform the pad to changes in the vehicle surface.

In accordance with another more detailed aspect of the present invention, the bottom surface of the pad can be substantially flat, while the top surface can include a plurality of indentations and protrusions. The protrusions can have an upper surface area to form the uppermost contact surface. Thus, the protrusions can form the greater surface area for the bottom surface. The top surface of the pad can be less tacky than the bottom surface so that an item can be removed without removing the pad from the vehicle surface. The bottom surface of the pad can be smoother than the top surface to improve the tackiness or cling of the bottom surface.

In accordance with another more detailed aspect of the present invention, a plurality of holes can be formed around at least a portion of a perimeter of the pad. The holes can give the appearance of a seam.

In accordance with another more detailed aspect of the present invention, indicia can be formed on the pad. The indicia can include a logo, an advertisement, an instruction, a promotion, a company name, or a product name. The top surface of the pad can include at least two sections. A first section can be substantially flat and can have the indicia thereon. A second section can be contoured to receive the item thereon.

In accordance with another more detailed aspect of the present invention, a removable backing layer can be remov-

US 6,673,409 B1

3

ably coupled to the bottom surface of the pad. A removable wrapper can be formed around the pad and the backing layer. The removable backing layer can resist the bottom surface of the pad from coupling to the wrapper.

In accordance with another more detailed aspect of the present invention, the pad can include an expanded vinyl material. In accordance with another more detailed aspect of the present invention, the pad can include a molded polyurethane material.

In accordance with another more detailed aspect of the present invention, at least a portion of the pad can be at least translucent. Thus, details of the vehicle surface can be viewed through the pad. Indicia can be formed on the bottom surface of the pad, and can be visible through the at least a portion of the pad that is at least translucent. Thus, the pad can protect the indicia.

Additional features and advantages of the invention will be apparent from the detailed description which follows, taken in conjunction with the accompanying drawings, which together illustrate, by way of example, features of the invention.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a frictional holding pad in accordance with an embodiment of the present invention, shown disposed on a dashboard of a vehicle and with a cellular phone disposed thereon;

FIG. 2 is a cross-sectional view of the frictional holding pad of FIG. 1;

FIG. 3 is a detailed, partial cross-sectional view of the frictional holding pad of FIG. 1;

FIG. 4 is a detailed, partial cross-sectional view of the frictional holding pad of FIG. 1 with a release layer and a wrapper in accordance with an embodiment of the present invention;

FIG. 5 is a detailed cross-sectional view of the frictional holding pad of FIG. 1; and

FIG. 6 is a cross-sectional view of another frictional holding pad in accordance with another embodiment of the present invention, shown disposed on a dashboard of a vehicle and with a cellular phone disposed thereon.

DETAILED DESCRIPTION

Reference will now be made to the exemplary embodiments illustrated in the drawings, and specific language will be used herein to describe the same. It will nevertheless be understood that no limitation of the scope of the invention is thereby intended. Alterations and further modifications of the inventive features illustrated herein, and additional applications of the principles of the inventions as illustrated herein, which would occur to one skilled in the relevant art and having possession of this disclosure, are to be considered within the scope of the invention.

As illustrated in FIGS. 1–5, a frictional holding pad, indicated generally at 10, in accordance with the present invention is shown for releasably retaining, or selectively maintaining, an item 14 on a surface 16. The pad 10 is disposed on the surface 16, and receives the item 14 thereon. The surface 16 can be planer or curved, and can include a dashboard or console of a vehicle. The item 14 can be any of a number of items, including for example, a cell phone, a personal digital assistant (PDA), a writing instrument, such as a pen or pencil, a pair of sunglasses, a pair of eye glasses, a global positioning system (GPS), a radio, a two-way radio, a citizens band (CB) radio, a walkie-talkie, a camera, a video

4

recorder, a cassette player/recorder, a mini-cassette recorder, a DVD player, a mini-disk player, a portable television (TV), etc. Securing personal items in a vehicle is one field that may benefit from use of the present invention. It will be appreciated that other items can be selectively secured to the surface 16 by the pad 10. In addition, it will be appreciated that the pad can be disposed on other surfaces.

The frictional holding pad 10 has an upper or uppermost surface 20 and a lower surface 22. The upper surface 20 is holds one or more objects 14 securely in place despite movement of the surface 16 or vehicle. The lower surface 22 is disposed on and grips the surface 16. The lower surface 22 of the frictional holding pad 10 can be "tacky", such that the pad 10 tends to cling to the surface 16 in a mechanical fashion, as opposed to a chemical or adhesive manner. The lower surface 22 also can be smoother than the upper surface 20, or have a more shiny appearance.

In addition, the lower surface 22 can have a greater surface area in contact with the surface 16 to provide a greater frictional engagement. The upper surface 20 can have less surface area in contact with the object 14 to provide less frictional engagement. Thus, the pad 10 remains on the surface 16 when the object 14 is removed, rather than removing the pad from the surface while the object is removed from the surface 16. The upper surface 20 can have contours or texture (indicated at 21) formed thereon to reduce the surface area of the upper surface 20 in contact with the item 14 disposed thereon. Thus, the item 14 can be removed from the pad 10 without the pad sticking to the item or being removed from the surface 16.

The frictional holding pad 10 can be flexible and capable of bending (indicated at 23 in FIG. 2) to conform to curves or details in the surface 16. The frictional holding pad 10 also can have a planer configuration and can be used on planar surfaces. The frictional holding pad 10 can be provided in an original planar configuration, supported by a paper backing or release layer 24. The release layer 24 prevents or resists the pad 10 or lower surface 22 from sticking or clinging to any wrapper or packaging of the pad. The release layer 24 may be stiffer than the pad to maintain the pad in a planar configuration. In addition, the release layer 24 can include indicia thereon, such as instructions for use and care of the pad. The release layer 24 can include a tab 25 protruding therefrom beyond a perimeter of the pad 10 to facilitate removal of the release layer from the pad. Upon removal of the release layer 24, the pad 10 is flexible to enable conformity with a wide array of curved surfaces. In addition, removal of the release layer 24 exposes the lower surface 22 of the pad to be disposed on the surface 16. A removable wrapper 26 can be formed around the pad 10 and the backing layer 24 to protect the pad prior to use. The wrapper 26 and backing layer 24 can be removed prior to placing the pad on the surface 16.

The upper surface 20 of the pad 10 can be non-chemically adhered to items 14 placed thereon. Like the bottom surface 22, the upper surface 20 can be "tacky", such that the pad 10 tends to cling to the item 14 in a mechanical fashion, as opposed to a chemical or adhesive manner. As stated above, the upper surface 20 can be contoured to include protrusions 30 and/or indentations 32. The protrusions 30 and indentations 32 can be rounded or curvilinear to form a more gradual transition between the protrusions and indentations, and create a contour on the upper surface 20 that is wavy or with a more natural appearance, creating a leather-like texture that can match the surface 16. The contour of the surface 20 creates an uppermost surface on the tops of the protrusions 30 that contacts the item 14. The upper or

US 6,673,409 B1

5

uppermost surface 20 thus has less surface area in contact with the item 14 than the lower surface 22 has in contact with the surface 16. Thus, a greater clinging force is exerted on the item 14 than on the surfaced 16 such that the item 14 can be removed from the pad 10 or upper surface 20 without removing the pad from the surface 16. In addition, the item 14 can be smaller than the pad itself, thus also contributing to less surface contact between the upper surface 20 and the item 14.

Referring to FIG. 5, an array or matrix of a plurality of indentations 34 can be formed in the upper surface 20 of the pad 10 creating a plurality of protrusions 36 therebetween. The indentations 34 and protrusions 36 can be more straight, linear or recta-linear to create a more modern appearance.

The pad 10 can be formed of or can include an expanded vinyl material. It has been found that the expanded vinyl material provides a good frictional or "tacky" quality that remains disposed on the surface, and that retains the items thereon. In addition, it has been found that such an expanded vinyl material typically can be disposed on the surface 16 without marring or otherwise chemically interfering with the material of many surfaces, such as vehicle dashboards. It will be appreciated that many surfaces, such as a vehicle dashboard, have a finished surface configured to be aesthetically pleasing and luxurious. Such surfaces can be formed of a plastic or leather material, and can be expensive to replace or repair. In addition, it will be appreciated that some surfaces are subjected to extreme condition, such as heat and sunlight. It has been found that the expanded vinyl material not only provides the required retention of objects and fixed relationship with the surface, but also typically does so without chemically interacting with the material of surface, or otherwise damage the surface.

The expanded vinyl material of the frictional holding pad 10 forms a temporary non-chemical bond with both 1) the items 14 stored on the upper surface 20, and 2) the surface 16. The pad 10 can be removed from the surface 16 without leaving behind any residue and without damaging the item. In this manner the pad 10 can be easily moved to any location the user desires. Because the pad is made from expanded vinyl, it can be easily cleaned with soap and water, and still retain its tackiness, and is thus reusable.

The expanded vinyl material more specifically can include: diisodecy/phlthalate; polymeric plasticer; a UV stabilizer; a vinyl hear stabilizer; a blowing agent for vinyl plastisol; and vinyl resin (plastic). The expanded vinyl material can have a weight between approximately 10 and 20 ounces per square yard; more preferably between approximately 12 and 18 ounces per square yard; and most preferably between approximately 14 and 16 ounces per square yard. The frictional holding pad 10 can have a thickness between approximately 0.03 and 0.09; more preferably between approximately 0.04 and 0.08 inches; and most preferably between approximately 0.05 and 0.06 inches.

The frictional holding pad 10 can be formed of different layers with different materials. For example, the pad 10 can have a skin layer 40 formed on the bottom surface 22 formed of a different material than the rest of the pad. For example, the material of the skin layer 40 can include: aqua ammonia (NH₄OH); azardine; rubber; color; and body for thickening. The skin layer 28 can have a thickness between 0.003 and 0.006 inches, and more preferably between 0.004 and 0.005 inches.

In addition, a perforated pattern can be formed in the pad 10 to give the impression of a stitching. For example, a

6

plurality of holes 44 can be formed around a perimeter of the pad near the edge to give the appearance of a stitched edge that can be more visually consistent with the surface 16. The pad 10 can be die cut from a larger sheet of material. The perforated pattern can similarly be formed by a die.

The frictional holding pad 10 also can include indicia 52 formed on the upper surface 20. The indicia 52 can be formed by ink, or ink-like materials, printed on the upper surface. The indicia 52 can include: a logo, an advertisement, an instruction, a promotion, a company name, and a product name. Thus, the frictional holding pad 10 can be used as a promotional item by including a business or product logo or name. It will be appreciated that such frictional holding pads can be inexpensively manufactured, and in use, can occupy a position of high and frequent visibility. Thus, such frictional holding pads can be inexpensively manufacture, and given away as promotional items. In addition, the indicia 52 can include instructions that can be related or unrelated to the use or care of the pad. For example, the instructions can include how to use or place the pad, and how to clean or wash the pad. As another example, the instructions can relate to the use of something other than the pad itself, such as an item to be disposed thereon. Thus, the pad serves dual functions, both as a frictional holding pad to secure and item, and providing ready instructions. The instructions can relate to the use of the item to be disposed thereon. Thus, such a pad can be provided with an item, or provided for use with such an item. For example, the instructions can relate to the use of a cellular phone. In addition, the indicia can include warning, such as warning not to drive while talking on the phone.

Referring to FIG. 6, another frictional holding pad, indicated generally at 110, is shown which is similar in many respects to the frictional holding pad described above and shown in the other drawings. The pad 110 can be translucent or transparent. Thus, surface details 114 on the surface 16 can be viewed or are visible through the pad 110 (indicated at 116 in FIG. 6). The translucent or transparent nature of the pad 110 can make the pad blend-in or match the surface 16 because of the surface details 114 showing through the pad. If the pad is translucent, it can also include a light coloring. Such coloring can help visually distinguish the pad 110 from the surface 16. Thus, a translucent pad can both blend with the surface while still being visually distinguishable therefrom.

The pad 110 can be formed of, or can include, a translucent or transparent material. For example, the pad 110 can include a molded polyurethane material. It has been found that the polyurethane material provides both a frictional or "tacky" quality that remains disposed on the surface, and that is transparent or translucent. In addition, the polyurethane material can be easily cleaned with soap and water.

The pad 110 also can include indicia 52 formed thereon. The indicia 52 can be formed on the bottom surface 22 of the pad 110 and still be visible because the pad is translucent or transparent. Forming the indicia 52 on the bottom surface 22 of tie pad can also protect the indicia from wear or removal.

The pad 110 also can include a printable portion or section 120 that can include a substantially flat area on the upper surface 20. Thus, the upper surface 20 can be substantially contoured, but still have a flat printable portion or section 120 for indicia 52.

The pad 110 preferably has a low profile, or is thin, having a thickness of less than approximately ⅛th of an inch. Thus, the items 14 are kept close to the surface 16 without extending where they might interfere with the operation of the vehicle.

US 6,673,409 B1

**7**

Thus, the pad 110 can be a thin sheet of polyurethane material with a substantially smooth and continuous lower surface 22 with a tacky characteristic to non-chemically and removably adhere to the surface 16, and a contoured upper surface 20 also with a tacky characteristic to non-chemically and removably adhere to an item The pad or polyurethane material can be translucent or transparent, and can include printing on either the upper or lower surface.

The frictional holding pads described above can be sized and shaped to match the desired surface. For example, the pads can be sized to receive the above identified objects thereon, and to fit on typical dash boards. As an example, a size less than seven inches has been found to be useful. In addition, the pads can be sized or shaped to match other designs, such as logos.

It is to be understood that the above-referenced arrangements are only illustrative of the application for the principles of the present invention. Numerous modifications and alternative arrangements can be devised without departing from the spirit and scope of the present invention while the present invention has been shown in the drawings and fully described above with particularity and detail in connection with what is presently deemed to be the most practical and preferred embodiments(s) of the invention, it will be apparent to those of ordinary skill in the art that numerous modifications can be made without departing from the principles and concepts of the invention as set forth in the claims.

What is claimed is:

1. A frictional holding device configured to be disposed on a vehicle surface and to receive and secure an item thereon, the device comprising:

a) a pad having a bottom configured to be disposed on the vehicle surface, and a top configured to removably receive the item thereon;

b) the top having an uppermost contact surface configured to contact and frictionally cling to the item;

c) the top surface including a plurality of indentations and protrusions, the protrusions having an upper surface area to form the uppermost contact surface;

d) the bottom having a lowermost contact surface configured to contact and frictionally cling to the vehicle surface;

e) the bottom of the pad being substantially flat; and

f) the lowermost contact surface having a greater surface area than the uppermost contact surface.

2. A device in accordance with claim 1, wherein the pad is bendable and includes a flexible material configured to conform the pad to changes in the vehicle surface.

3. A device in accordance with claim 1, wherein the bottom surface of the pad is tacky; and wherein the top surface is less tacky than the bottom surface.

4. A device in accordance with claim 1, wherein the bottom surface of the pad is smoother than the top surface.

5. A device in accordance with claim 1, further comprising:

a plurality of holes, formed around at least a portion of a perimeter of the pad.

6. A device in accordance with claim 1, further comprising:

indicia, formed on the top surface of the pad, the indicia being selected from the group consisting of: a logo, an advertisement, an instruction, a promotion, a company name, and a product name.

7. A device in accordance with claim 1, wherein the top surface includes at least two sections, including a first

**8**

section that is substantially flat and has indicia thereon, and a second section that is contoured and configured to receive the item thereon.

8. A device in accordance with claim 1, further comprising:

a removable backing layer, removably coupled to the bottom surface of the pad.

9. A device in accordance with claim 8, further comprising:

a removable wrapper, formed around the pad and the backing layer, the removable backing layer resisting the bottom surface of the pad from coupling to the wrapper.

10. A device in accordance with claim 1, wherein the pad includes an expanded vinyl material.

11. A device in accordance with claim 1, wherein the pad includes a polyurethane material.

12. A device in accordance with claim 1, wherein at least a portion of the pad is at least translucent.

13. A device in accordance with claim 12, further comprising indicia, formed on the bottom surface of the pad, and visible through the at least a portion of the pad that is at least translucent.

14. A device in accordance with claim 1, wherein the frictional holding pad has a width less than approximately 7 inches, a length less than approximately 7 inches, and a thickness less than approximately ¼ inch.

15. A frictional holding device configured to be disposed on a vehicle surface and to receive and secure an item thereon, the device comprising:

a) a pad having a bottom configured to be disposed on the vehicle surface, and a top configured to removably receive the item thereon;

b) the top having a contoured top surface configured to contact and frictionally cling to the item;

c) the top surface including a plurality of indentations and protrusions;

d) the bottom having a smooth bottom surface configured to contact and frictionally cling to the vehicle surface; and

e) the bottom surface being smoother than the top surface.

16. A device in accordance with claim 15, wherein the contoured top surface has an uppermost surface area less than a surface area of the bottom surface.

17. A device in accordance with claim 15, wherein the pad is bendable and includes a flexible material configured to conform the pad to changes in the vehicle surface.

18. A device in accordance with claim 15, wherein the bottom surface of the pad is tacky; and wherein the top surface is less tacky than the bottom surface.

19. A device in accordance with claim 15, further comprising:

a plurality of holes, formed around at least a portion of a perimeter of the pad.

20. A device in accordance with claim 15, further comprising:

indicia, formed on the top surface of the pad, the indicia being selected from the group consisting of: a logo, an advertisement, an instruction, a promotion, a company name, and a product name.

21. A device in accordance with claim 15, wherein the top surface includes at least two sections, including a first section that is substantially flat and has indicia thereon, and a second section that is contoured and configured to receive the item thereon.

US 6,673,409 B1

9

**22**. A device in accordance with claim **15**, further comprising:

a removable backing layer, removably coupled to the bottom surface of the pad.

**23**. A device in accordance with claim **22**, further comprising:

a removable wrapper, formed around the pad and the backing layer, the removable backing layer resisting the bottom surface of the pad from coupling to the wrapper.

**24**. A device in accordance with claim **15**, wherein the pad includes an expanded vinyl material.

**25**. A device in accordance with claim **15**, wherein the pad includes a polyurethane material.

**26**. A device in accordance with claim **15**, wherein at least a portion of the pad is at least translucent.

**27**. A device in accordance with claim **26**, further comprising indicia, formed on the bottom surface of the pad, and visible through the pad.

**28**. A device in accordance with claim **15**, wherein the frictional holding pad has a width less than approximately 7 inches, a length less than approximately 7 inches, and a thickness less than approximately ¼ inch.

10

**29**. A frictional holding device configured to be disposed on a vehicle surface and to receive and secure an item thereon, the device comprising:

a) a pad having a bottom configured to be disposed on the vehicle surface, and a top configured to removably receive the item thereon;

b) the top having a contoured top surface with a plurality of indentations and protrusions, the plurality of protrusions having an uppermost contact surface configured to contact and frictionally cling to the item;

c) the bottom having a lowermost contact surface configured to contact and frictionally cling to the vehicle surface;

d) the bottom of the pad being substantially flat and being smoother than the top surface; and

e) the lowermost contact surface having a greater surface area than the uppermost contact surface.

*   *   *   *   *

# EXHIBIT B



http://www.Degrips.com/catalog/product_info.php?products_id=302

☰ view cart ○ checkout ○ my account ○ contact us

home | all about egrips | ○ egrips store

**stops drops!** **Find my egrips™** [Find]

Buy any 2 egrips™ and receive a FREE universal set! **offer details**

Top » Home » General Purpose » U-9201

**Shopping Cart**

1 × StuffBak Loss Protection ID Label

$2.95

**Choose egrips™ for...**

Cell Phones (292)
PDAs (137)
CD Players (6)
Cordless Phones (6)
Gaming Devices (5)
General Purpose (7)
GPS Units (6)
MP3 Players (17)
Notebooks-Laptops (3)
OGO (2)
Remote Controls (3)
StuffBak (1)
Two-way Radios (1)
Video/Media Center (1)
XM Radios (4)
DVD Players (1)
Photo. Equipment (1)
Professional Grooming Products (1)

**Information**

Mail In Order Form
News
Returns
Shipping

**Affiliate Program**

Affiliate Information
Affiliate Log In

## egrips for... Large Pad 2.6"x4.55" rectangle

$9.95

(Don't forget to choose your color below.)

Add Qty: 1
[Add to Cart]

- **egrips™** are custom, non-slip grips for your cell phone, PDA or other handheld device.
- **egrips™** are made of an amazing, super-grippy material that grips virtually any surface and keeps your device from slipping, sliding or falling.
- Get **egrips** for your device and throw away your phone or PDA case forever.
- **egrips™** protect your investment by keeping it right where you put it.
- **Click here to find out more about egrips™**



2.6"

4.55"

**Click to enlarge**

*Choose your color*

| Color | Extra Cost | Sample |
|---|---|---|
| ● Solid Black | $0.00 | |
| ○ Silver | $0.00 | |
| ○ Black Sparkle | +$1.00 | |
| ○ Silver Sparkles | +$1.00 | |

The base price for egrips for... Large Pad 2.6"x4.55" rectangle is **$9.95**

Add Qty: 1

[Checkout]   [Add to Cart]

**Click here to find out how we ship your order.**

Powered by osCommerce

**Home**   |   **All About egrips®**   |   **egrips® Store**   |   **Contact Us**
**Privacy Policy**   |   **Shipping**   |   **Applying egrips®**

Copyright © 2003-2004 egrips.com • egnps trademark of Flexible Innovations, Ltd.
**Advertising Specialties, OEM's, Wholesale Distributors and Retail Dealer**
**Read Our Privacy Notice**