

FILED
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TX

15 5:23

ORIGINAL   **IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| FLEXIBLE INNOVATIONS, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 4-05-CV-021-A |
| AMERICAN COVERS, INC. d/b/a | § | |
| HANDSTANDS, | § | |
| | § | |
| Defendant. | § | |

# PLAINTIFF'S MOTION FOR CONTEMPT
# AND BRIEF IN SUPPORT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW FLEXIBLE INNOVATIONS, LTD., Plaintiff, a Texas Limited Partnership ("Flexible"), and moves for an Order to Show Cause why Defendant, AMERICAN COVERS, INC. ("ACI"), should not be held in contempt of Court, as follows:

## Motion

1.    This case first involved trademark infringement claims of Flexible claiming that its registered "**EGRIPS**" mark, as used for frictional holding products, was infringed by ACI's use of "**IGRIP**" on similar products.

2.    Submitted herewith is an attached Appendix ("Appx") which includes the Affidavits of Fred Antonini, the President of Antonini Enterprises, Inc., the general

partner of Flexible, one of which is directed to non-confidential subject matter and exhibits, and the other which is directed to a Confidential Settlement Agreement. The Affidavits and their Exhibits ("Ex") provide evidentiary support for this Motion.

3.      Flexible is the owner of U.S. Trademark Registration No. 2,899,410 (Ex A1, Appx at 6) for **"EGRIPS."** Flexible has been selling its **"EGRIPS"** frictional holding products since at least June 2003 to present. Flexible's various **"EGRIPS"** products are shown on www.egrips.com (Appx at 1-2).

4.      Effective May 10, 2005, Flexible and ACI entered into a Confidential Settlement Agreement ("CSA"), Appx at 17-25 ("Conf Ex B1") to resolve the then pending Texas **"EGRIPS"** trademark litigation (Appx at 2).

5.      Pursuant thereto, the parties submitted an Agreed Partial Consent Judgment to the Court ("APCJ"), signed by the Court and filed on May 18, 2005. Appx at 7-8 ("Ex A2").

6.      Paragraph 3 of that judgment reads: "[ACI] is enjoined from using **'IGRIP'** in association with its frictional holding products." Appx at 7.

7.      ACI has in fact *not* ceased using **"IGRIP"** in association with its frictional holding products.

8.      Attached as Ex A3 in the Appendix, Appx at 9, is a photocopy of ACI's frictional holding product showing continued use of the prominently displayed **"IGRIP™"** mark. It begins, in parallel text, "HOLDS Ipod™ on Dash." The photograph beneath the **"IGRIP"** banner shows a portable device held in place by a frictional holding pad that has the **"IGRIP"** mark formed in the pad.

9.     As sworn to in Mr. Antonini's Affidavit, Appx at 3, this Ex A3 was obtained by Flexible from an ACI display at the Consumer Electronics Show ("CES") in Las Vegas in early January 2006 in conjunction with ACI's display and marketing of its frictional holding products and as shown in the photograph of ACI's display, Ex A5, Appx at 11. This is obviously a substantial period of time following this Court's Judgment of May 18, 2005.

10.     Although not being advanced as grounds for contempt, it must be noted in context that ACI has also adopted a mark of "**GRIPS™**" as modified by the word "Gadget," likewise in the same market as its "**IGRIP**" frictional holding products.  Ex A4, Appx at 10.  Such ACI "**GRIPS**" products were displayed and marketed for sale at the CES show also, Appx at 3, 11.  ACI's usage of the "**GRIPS**" mark in conjunction with its sale of such goods clearly violates the Confidential Settlement Agreement, ¶ 3.[1]

11.     Paragraph 3 of the CSA, Appx at 18, states:  "ACI agrees to cease the promotion, advertising, and selling of any of its frictional holding products under the "**IGRIP**" mark *or any other mark that is confusingly similar to FI's "EGRIPS" mark.*"  *Id.* (emphasis added).  ACI's promotion, advertising, and selling of the products shown in

---

[1]  Because this CSA was entered into in confidence, it is filed concurrently herewith in a sealed "Confidential" envelope as Ex B1, Appx at 17-25.  Actually, Flexible takes the position that confidentiality need not be retained for purposes of this action, because the CSA states in ¶ 9, the "**CONFIDENTIALITY CLAUSE**," Appx at 21, that disclosure may be made "as may be required by law, by order of a court."  *Id.*  Flexible is required by law to substantiate its Motion with the relevant evidence provided to the Court.  *Cf. Elkharoubi v. JPMorgan Chase Bank, N.A.,* No. 3:05-CV-0256-BH (P); 2006 U.S. Dist. LEXIS 168 at *4 (N.D. Tex. Jan. 5, 2006) ("the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor").  Therefore, the CSA may be brought before the Court.  Nevertheless, out of caution, Flexible files the CSA under seal.

Ex A4, Appx at 10, violates ¶ 3 of the CSA. ACI's practice of employing "**GRIPS™**" in this fashion is by it own "™" trademark marking is an admission of trademark use.

12.    Further, the photograph of ACI's booth at the CES trade show, Ex A5, Appx at 11, shows a portion of ACI's booth that displays both the "**IGRIP**" and "**GRIPS**" products of ACI and are further evidence of ACI's violation of this Court's Order and the CSA. Indeed, during February 8-10, 2006, ACI was continuing to display and market its "**GRIPS**" product at the Advertising Specialties Trade Show in Dallas, Texas (see Ex A7, Appx at 14).

13.    As shown on selected copies of ACI's current web pages, Ex A6, Appx at 12-13, ACI continues to use "**IGRIP**" to link web users to its associated frictional holding products, while further promoting its "**GRIPS**" frictional holding products, further in violation of this Court's Order and the CSA, respectively.

14.    In accordance with paragraph 8 of the CSA, Appx at 22, Flexible is hereby contemporaneously notifying ACI in writing of this breach and providing the thirty (30) day contractual window for ACI to cure the violation. If a complete cure does not timely occur, Flexible will then bring this related matter to the Court by appropriate pleadings.

### Brief

15.    Under this Circuit's law, "'A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence:  1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order.' *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992) [citation omitted]. The contemptuous actions need not be

willful so long as the contemnor actually failed to comply with the court's order.  *See N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir. 1984)." *American Airlines, Inc. v. Allied Pilots Association*, 228 F.3d 574, 581 (5th Cir. 2000), *cert. denied*, 531 U.S. 1191 (2001) (aff'g N.D. Tex.).  Here, (a) this Court's order was in effect, (b) the order required ACI to stop using "IGRIP", and (c) ACI is continuing to use "IGRIP" in direct violation to the clear, unambiguous language of this Court's order.  A more appropriate case for contempt sanctions could hardly be imagined.

16.    Continuing to use a mark following a consent decree not to do so is a frequent subject of contempt proceedings.  *See, e.g., AMF Inc. v. Jewett*, 711 F.2d 1096; 219 U.S.P.Q. (BNA) 486 (1st Cir. 1983); *Wolfard Glassblowing Co. v. Vankbragt*, 118 F.3d 1320; 43 U.S.P.Q.2d (BNA) 1378 (9th Cir. 1997); *Perfect Fit Industries, Inc. v. ACME Quilting Co.*, 646 F.2d 800; 210 U.S.P.Q. (BNA) 175; 31 Fed. R. Serv. 2d (Callaghan) 882 (2d Cir. 1981); *Colonial Williamsburg Foundation v. Kittinger Co.*, 38 F.3d 133 (4th Cir. 1994); *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529; 230 U.S.P.Q. (BNA) 332 (11th Cir. 1986).

17.    As ACI had been enjoined from using "IGRIP," ACI had a duty to distance itself from Flexible's "EGRIPS" mark in selecting any new mark.

> When enforcing injunctions that enjoin use of any mark confusingly similar to the protected mark, courts should not adjudicate issues such as product proximity but should simply evaluate whether or not the new mark is confusingly similar to the protected mark. . . . Although the terms of such an injunction impose a heavier burden on an infringing party with a redesigned mark than is imposed on a newcomer with a similar mark, 'a party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party.'

**PLAINTIFF'S MOTION FOR CONTEMPT AND BRIEF IN SUPPORT**                    **Page 5**
F \Stor\RLS\FLEXIBLE\ACI\P&D\P'sMtnContempt wpd

*Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9ᵗʰ Cir. 1997), citing *Wella Corp. v. Wella Graphics, Inc.*, 37 F.3d 46, 48 (2d Cir. 1994). As the Fifth Circuit pronounced in *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 705 (5ᵗʰ Cir. 1981):

> . . . competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line even if that requirement involves a handicap as compared with those who have not disqualified themselves.

18.   "Consent decrees have elements of both contracts and judicial decrees." *United States v. City of Jackson*, 359 F.3d 727, 732 (5ᵗʰ Cir. 2004) (citation omitted). Herein, Flexible focuses on the "judicial decree" aspect of the Order. In particular, because the elements predicating contempt are so obviously present, Flexible focuses primarily on appropriate action to *remedy* the contempt. *E.g.*:

> In *United States v. United Mine Workers*, 330 U.S. 258, 302-04, 91 L. Ed. 884, 67 S. Ct. 677 (1947), the Supreme Court detailed the factors to be considered in the imposition of a civil contempt sanction: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order. The Court has considered these factors in ruling on the instant Motion for Contempt.

*Washington Mutual Bank, F.A. v. Condit*, No. 5:01-CV-250-C; 2003 U.S. Dist. LEXIS 19596 at *3-4 (N.D. Tex. Nov. 3, 2003) (citations omitted).

19.   A contempt order may require "that the violator reimburse the complainant his actual loss." *Mendoza v. Regis Corp.*, No. SA-01-CA-0937 FB (NN); 2005 U.S. Dist. LEXIS 16687 at *20 (W.D. Tex. Aug. 11, 2005) (footnote citation omitted). In doing so, "Compensatory damages typically remedy those elements of harm which may be

calculated, but also those legally recognized losses which are non-pecuniary and those which cannot be quantified with adequate certainty." *Mendoza. supra*, at \*23 (footnote citation omitted). "Fifth Circuit jurisprudence recognizes the award of more abstract damages in a civil contempt setting." *Id.* at \*24 (footnote citation omitted).

20.    "The prevailing party in a contempt proceeding may recover the out-of-pocket costs it incurs in discovering the contemptuous conduct and bringing it to the court's attention.   In Fifth Circuit jurisprudence, there is no requirement that the contemnor's actions be willful in order for the aggrieved party to recover reasonable attorneys' fees and costs.   A finding of contempt is alone sufficient for the aggrieved party's recoupment of reasonable attorneys' fees and costs." *Mendoza v. Regis Corp.*, *supra*, 2005 U.S. Dist. LEXIS 16687 at \*26 (footnote citations omitted).   A party's fees can be proven by affidavit.[2]

21.    In fact, in a given case the award of damages flowing from the contempt may be quite substantial.   In *American Airlines v. Allied Pilots*, *supra*, the Fifth Circuit affirmed a contempt sanctions damages award of $45.5 million.   228 F.3d at 576.   It explained:

> 'Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.' *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 . . . (1947); *see also Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976) ('Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's noncompliance.').   Because the contempt sanction in this case was ordered to compensate American for

---

[2] Plaintiff seeks leave to file an affidavit once contempt has been adjudged.

lost revenue resulting from the defendants' contemptuous conduct, it is clearly compensatory in nature.

> The district court 'has broad discretion in the assessment of damages in a civil contempt proceeding.' *Long Island Rail. Co. v. Brotherhood of Rail. Trainmen*, 298 F. Supp. 1347, 1347 (E.D.N.Y. 1969). 'The purpose is to compensate for the damages sustained. The public rights that the said court orders sought to protect are important measures of the remedy.' *Id.* (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 93 L. Ed. 599, 69 S. Ct. 497 (1949)). In this case the sanction issued by the district court sought to protect the sanctity of judicial decrees and the legal process. *See McComb*, 336 U.S. at 193 ('The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief.'). 'In our complex society, there is a great variety of limited loyalties, but the overriding loyalty of all is to our country and to the institutions under which a particular interest may be pursued.' *United Mine Workers*, 330 U.S. at 306. The district court did not abuse its discretion in deciding to award American compensatory damages for the injuries caused by the defendants' civil contempt.

*American Airlines v. Allied Pilots, supra*, 228 F.3d at 585 (emphasis added; some citations omitted; footnote omitted).

22.    In this case, there is a blatant disregard of this Court's authority by ACI. While intent or malice is not a requisite for contempt relief, the fact that ACI is also flagrantly violating the parties' CSA proves up both. Flexible and ACI are competing head to head in the same industry and in many of the same markets. The financial loss to Flexible flowing from the contempt is difficult to calculate, but it is certainly substantial. Therefore, an award of damages is appropriate, as stated in the *Mendoza v. Regis Corp.*, case, *supra*, 2005 U.S. Dist. LEXIS 16687 at *23-24 (W.D. Tex. Aug. 11, 2005) ('"Compensatory damages typically remedy those elements of harm which may be calculated, but also those legally recognized losses which are non-pecuniary and those which cannot be quantified with adequate certainty.' . . . Fifth Circuit jurisprudence

recognizes the award of more abstract damages in a civil contempt setting.") (footnote citation omitted). Attorneys fees are also nearly universally awarded if contempt is found. Given the flagrancy of the contempt, all damages and fees incurred should be awarded.

WHEREFORE, Plaintiff Flexible prays that the Court will: (a) issue an order to show cause why Defendant ACI should not be held in contempt; (b) upon hearing, find ACI in contempt, whether criminally, civilly, or both; (c) enter such further injunctive relief as may be appropriate to obtain compliance; (d) award Flexible its damages (to be proven up); and (e) award Flexible its attorneys' fees incurred due to contemnor's contumacious conduct, together with such other or further relief to which Flexible may be entitled.

Respectfully submitted,

Richard L. Schwartz
TBA # 17869500

Thomas F. Harkins, Jr.
TBA # 09000990

**WHITAKER, CHALK, SWINDLE & SAWYER, L.L.P.**
301 Commerce Street, Suite 3500
Fort Worth, TX 76133-4168
Phone: (817) 878-0500
Fax: (817) 878-0501

**ATTORNEYS FOR PLAINTIFF
FLEXIBLE INNOVATIONS, LTD.**

## CERTIFICATE OF CONFERENCE

I hereby certify that on the _13th_ day of February, 2006, I communicated the substance of this Motion for Contempt with counsel for Defendant, Peter M. de Jonge, via voice message and email. No communication was received from counsel for Defendant, and it is therefore believed to be opposed. Therefore, this Motion is hereby submitted to the Court for resolution.

Richard L. Schwartz

## CERTIFICATE OF SERVICE

I hereby certify that on this the _15th_ day of February, 2006, I served a copy of this instrument by First Class United States mail, postage prepaid, on counsel for Plaintiff, Peter M. de Jonge and Nathan S. Winesett, THORPE NORTH & WESTERN LLP, P.O. Box 1219, Sandy, Utah 84091-1219; and Stephen C. Maxwell, MAXWELL & KNOWLES, PC, 100 East 15th St., Ste. 120, Fort Worth, TX 76102.

Richard L. Schwartz